UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

THE UNITED STATES OF AMERICA

               -v-                          08 CR. 10 (DLC)

LEONARDO MONTES-REYES,

         **Defendant**
-
-----------------------------------------------------------------x

## MEMORANDUM OF LAW AND FACT IN SUPPORT OF MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS

### INTRODUCTION

Leonardo Montes-Reyes has been indicted on charges of possession of heroin with intent to distribute in violation of Title 21, U.S.C. §841(b)(1)A). The bulk of the evidence against Mr. Montes-Reyes was obtained through a search of luggage in his hotel room on December 19, 2007 by D.E.A. agents. The agents obtained Mr. Montes-Reyes' consent to enter his room by identifying themselves as law enforcement officers and falsely informing Mr. Montes-Reyes that they wanted to "look around" his room as part of a purported search for a "missing" girl. For the following reasons, the evidence seized from Mr. Montes-Reyes and statements made by him following his arrest must be suppressed because Mr. Montes-Reyes did not voluntarily consent to either the entry into his room or the subsequent search of his luggage.

### STATEMENT OF FACTS

On December 19, 2007, D.E.A. agents were conducting surveillance at the Newton Hotel, an establishment located at 95th Street and Broadway in Manhattan. The agents learned that

Leonardo Montes-Reyes had checked into the hotel the night before and paid for his room in cash. The agents also learned that Mr. Montes-Reyes had stayed at the Newton Hotel about 5 times over the past two years. On each previous occasion, Mr. Montes-Reyes paid cash for his room and stayed for one night. Complaint, Exhibit A, at par.4.

Based on this information[1], the D.E.A. agents apparently decided that they wanted to search Mr. Montes' hotel room. The complaint does not specify what the agents were looking for. In light of the fact that the agents were at the hotel pursuant to a D.E.A. investigation, it appears as is they suspected Mr. Montes-Reyes of drug trafficking.

Although the agents wanted to examine Mr. Montes-Reyes' room, they did not have a search warrant for the room nor did they seek to obtain one.[2] Undeterred by the absence of a warrant, D.E.A Special Agent Marlow Luna, accompanied by a number of fellow law enforcement officers, proceeded to Room 814, the room registered to Mr. Montes-Reyes.

Upon arriving at Room 814, Agent Luna knocked on Mr. Montes-Reyes' door which was closed. When Mr. Montes-Reyes answered the knock, Agent Luna identified himself as a law enforcement officer. Complaint, par. 5. He told Mr. Montes-Reyes that he was looking for a missing person and showed him a photograph of a young girl. Complaint, par.5; Montes-Reyes Affidavit, par.  . He also told Mr. Montes-Reyes that the police were checking all the rooms in the hotel for the girl. He asked Mr. Montes-Reyes if he could enter his room to "look around" for the purportedly missing girl. Complaint, par. 5.

Mr. Montes-Reyes had no reason to suspect that Agent Luna was deceiving him and did

---

[1] If the agents possessed any other information about Mr. Montes-Reyes, it does not appear in the complaint or any of the discovery furnished to the defense.

[2] The information cited in the complaint would, of course, not been sufficient to establish probable cause for a search warrant.

not know that Agent Luna was not looking for a missing girl, but, rather, wanted to search his room for evidence of criminality on Mr. Montes-Reyes part. Accordingly, Mr. Montes-Reyes readily agreed to let the officer come into his room so that the police could quickly look around the small chamber and verify that there was no missing person inside. He gave his consent because he wanted to assist the police with their purported search for a missing girl and also believed that he could not refuse a request to aid the police in their supposed search for a missing girl.

As soon as Mr. Montes gave his "consent," a large number of agents stormed into his room. Three of the agents patted Mr. Montes down for weapons and sat him down on the toilet seat of the hotel bathroom. Affidavit, par. 7.

The agents proceeded to search both the room and Mr. Montes-Reyes personal possessions. He saw the police open his luggage–a suitcase and a duffle bag–which he had stored on the floor of the room. Inside the duffle bag, the agents found clothing that appeared wet. Ultimately, the agents concluded that the clothes had been soaked in a solution of heroin. Mr. Montes was then arrested.

The complaint alleges that before the agents rifled through Mr. Montes' suitcase and duffle bag, Agent Luna asked Mr. Montes if he had any guns with him. According to Agent Luna' complaint, when Mr. Montes stated he did not have any guns, Agent Luna requested consent to examine Mr. Montes' luggage and Mr. Montes signed a form agreeing to this particular search. However, the only "consent" form provided in discovery is a form signed by Mr. Montes-Reyes in which he consents only to the search of room 814. Exhibit B. The form does not provide a time when it was signed nor does it specify consent to search Mr. Montes-Reyes' luggage.

Mr. Montes-Reyes, for his part, does not recall any of the police officers questioning him about guns and/or asking permission to search his luggage for weapons. He did not agree to let the police search his luggage. He does remember that after he was taken from the hotel and placed in custody, he was instructed to sign a number of forms, including a consent to search form. Affidavit, par. 10.

**ARGUMENT**

**THE EVIDENCE SEIZED FROM MR. MONTES-REYES' ROOM MUST BE SUPPRESSED BECAUSE MR. MONTES-REYES DID NOT VOLUNTARILY CONSENT TO LET THE POLICE ENTER HIS ROOM OR SEARCH HIS LUGGAGE**

**A. THE TRICKERY AND DECEPTION EMPLOYED BY THE POLICE TO GAIN ENTRY TO MR. MONTES-REYES' ROOM REQUIRES SUPPRESSION OF THE EVIDENCE DISCOVERED IN THE SUBSEQUENT SEARCH**

The evidence seized from Mr. Montes-Reyes must be suppressed because it was obtained by a peculiarly repugnant form of police deceit and trickery that precludes any finding that the "consent" to let the police "look around" his room was voluntary. A warrantless entry into or search of someone's home is per se unreasonable, absent exigent circumstances or consent. Payton v. New York, 445 U.S. 573 (1980).[3] Here, the government relies only on Mr. Montes-Reyes purported consent. When the government attempts to justify the search on the basis of a defendant's consent, the government must "demonstrate that the consent was in fact voluntarily given and not the result of duress or coercion, express or implied." Schneckloth v. Bustamonte, 412 U.S. 218, 248 (1974). The government cannot carry its burden in this case because Mr.

---

[3] A person staying in a hotel room has the same constitutional protection against unreasonable search of that room as someone in his or her own home. Stoner v. California, 376 U.S. 483, 490 (1964).

Montes-Reyes' "consent" was the product of coercion and duress inherent to a situation where the police flagrantly lie about the purpose and intended scope of their request to search.

Although some police ruses to obtain consent are permissible, the Constitution does not allow law enforcement officers to obtain consent for a warrantless search by tricking and deceiving suspects about the purpose and scope of the search. Such tactics have been strongly condemned by numerous state and federal courts and held to require the suppression of evidence. See e.g. Bumpers v. North Carolina, 391 U.S. 543 (1968)(defendant's grandmother did not voluntarily consent to search of her home where consent was given only after police falsely claimed that they had warrant to search home); United States v. Bosse, 898 F.2d 113, 115 (9th Cir. 1990) (no valid consent to enter defendant's home where agent obtained consent to enter home by falsely telling defendant that he wanted to inspect home as part of license application process; "a ruse entry when the suspect is informed that the person seeking entry is a government agent, but is misinformed as to the purpose for which the agent seeks entry cannot be justified by consent"); Securities and Exchange Commission v. ESM Government Securities, 645 F.2d 310, 316 (5th Cir. 1981)(I.R.S. agent's misrepresentation of purpose for gaining consent to inspect taxpayer's record was improper; "[w]hen a government agent presents himself to a private individual, and seeks that individual's co-operation based on his status as a government agent, the individual should be able to rely on the agent's representation"); United States v. Giraldo, 743 F.Supp. 152 (E.D.N.Y. 1990)(consent obtained to enter apartment was involuntary and not a valid waiver of Fourth Amendment protections where agent posed as gas company worker and sought entry by claiming there was a possible gas leak); United States v. Cruz, 701 F.Supp. 440, 448 (S.D.N.Y. 1989)(evidence suppressed where agents obtained consent to search by falsely representing ability to quickly obtain a search warrant; "[p]ublic policy favors a prophylactic rule

of exclusion where law enforcement officers misstate facts"); United States v. Lopez-Lopez, 443 F.Supp. 2d 1130, 1134 (W.D. Mo. 2006)(consent to search apartment was involuntary where agents lied to defendant about purpose and scope of search; "[t]he Court holds law enforcement officers in high regard and believes that when a law enforcement officer presents himself or herself to an individual and thereafter seeks that individual's cooperation or consent, it is axiomatic that the individual be able to rely on the officer's representations"); Krause v. Commonwealth of Kentucky, 206 S.W. 3d 922, 927 (Ky. 2006)(consent to warrantless search was not voluntary where police obtained consent by fabricating story that a young girl had just been raped and they needed to look around residence; such a ruse could not be tolerated because it "exploited a citizen's civic desire to assist police in their official duties for the express purpose of incriminating that citizen"); People v. Daugherty, 514 N.E. 2d 228, 233 (Ill. 1987)("Where, as here, the law enforcement officer without a warrant uses his official position of authority and falsely claims that he has legitimate police business to conduct in order to gain consent to the premises when, if fact, his real reason is to search inside for evidence of a crime, we find that this deception under the circumstances is so unfair as to be coercive and renders the consent invalid"). See also United States v. Hampton-El, 1994 WL 708156 (S.D.N.Y. 1994)(denying suppression on independent grounds, but expressing grave doubt that police search of building was lawful where agents obtained consent to enter premises by falsely presenting themselves as building inspectors).

Agent Luna's unsavory deception is on a par with or worse than the conduct deemed impermissible in the above cases. Indeed, lying about the need to check a room for a young, missing girl is particularly reprehensible because of its capacity to undermine public trust in the police vis-a-vis emergency situations. See United States v. Giraldo, supra (police conduct in

gaining consent to search by pretending to look for gas leak was inimical to public policy because "when the police or the gas company come to the door warning of a real gas leak or other life-threatening emergency, it is in everyone's interest that they be believed"). Underlying the Supreme Court's command that consent must be truly voluntary before it will justify a warrantless search is "society's deeply felt belief that the criminal law cannot be used as an instrument of unfairness...." Schneckloth v. Bustamonte, supra at 225. It is hard to imagine many ruses more unfair than the one used against Mr. Montes-Reyes and the evidence seized as the result of the deception must be suppressed.

B. **THE EVIDENCE MUST BE SUPPRESSED BECAUSE THE SEARCH OF MR. MONTES-REYES LUGGAGE EXCEEDED THE SCOPE OF THE SEARCH TO WHICH HE PURPORTEDLY CONSENTED**

Even if Mr. Montes-Reyes had validly consented to allowing the police to look around his room for a missing girl, the evidence seized from his duffle bag would still have to be suppressed. The standard for measuring the scope of a suspect's under the Fourth Amendment is that of "objective" reasonableness–what would the typical reasonable person had understood by the exchange between the officer and the suspect. Florida v. Jimeno, 500 U.S. 248, 251 (1991); United States v. Gandia, 424 F.3d 255, 265 (2d Cir. 2005). "Government agents may not obtain consent to search on the representation that they intend to look only for certain specified items and subsequently use that consent as a license to conduct a general exploratory search." United States v. Breit, 429 F.3d 725, 730 (7th Cir. 2005), citing United States v. Dichiarinte, 445 F.2d 126, 129 (7th Cir. 1971).

Here, by Agent Luna's own admission, Mr. Montes-Reyes consented only to allowing the police to "look around" his room for a missing girl. The scope of this consent surely did not

extend to permitting the police to open his luggage–bags which were not remotely capable of concealing a teen-age girl.  Accordingly, even if the initial entry were deemed constitutional, the evidence would still have to be suppressed.

C.  **THE ALLEGED SIGNING OF A "CONSENT TO SEARCH" FORM IS INSUFFICIENT TO DISSIPATE THE TAINT FROM THE INITIAL UNLAWFUL ENTRY**

Finally, any purported "consent" given by Mr. Montes-Reyes to search his luggage cannot save the search from the taint of the initial illegal re-entry.  Mr. Montes-Reyes denies that he gave the police consent to search his bag and/or that he signed a "consent" form before the police did search the bags.  But, even if the allegations in the complaint are entirely credited, the evidence would still have to be suppressed.  If the initial entry into Mr. Montes-Reyes' room was unlawful–as it surely was–the government would have to demonstrate that the taint of the initial illegal entry had been dissipated before the consent was given.  United States v. Vasquez, 638 F.2d 507, 527 (2d Cir. 1980).  This "ordinarily involves showing that there was some significant intervening time, space, or event."  Id.

Here, taking the complaint at its word, there is not even a suggestion that there was any significant break or important intervening circumstances between the initial entry and the alleged consent to search the bags.  At best, the alleged consent for the search of the luggage was made been given within minutes of the police entry into the room and after Mr. Montes-Reyes was under the control of the police.   The only significant change at this juncture is that Mr. Montes-Reyes would have realized the police had lied to him and could not be trusted. These circumstances do not come close to supporting a finding that the consent was "sufficiently an act of free will to purge the primary taint of the illegal invasion."  Brown v. Illinois, 422 U.S. 590,

599 (1975).

**D. THE CUSTODIAL STATEMENT MADE BY MR. MONTES-REYES MUST BE SUPPRESSED BECAUSE THEY ARE THE DIRECT FRUIT OF THE UNLAWFUL SEARCH AND SEIZURE**

Mr. Montes-Reyes made inculpatory statements to the police following his arrest. The government claims that he made these statements after being advised of his <u>Miranda</u> rights, but has not provided any written <u>Miranda</u> waiver. Even if Mr. Montes-Reyes was advised of his <u>Miranda</u> rights, the statements would have to be suppressed because they were the direct fruits of the illegal search and seizure. <u>Brown v. Illinois</u>, 422 U.S. 590 (1975).

## CONCLUSION

For the foregoing reasons, Mr. Montes-Reyes Motion to Suppress Physical Evidence and Statements should be granted. In the alternative, the Court should hold a hearing on the matter.

Respectfully submitted,

Mark B. Gombiner
Attorney for Leonardo Montes-Reyes

cc: A.U.S.A. Michael Rosensaft

Case 1:08-cr-00010-DLC   Document 3-2   Filed 02/29/2008   Page 1 of 4

07 MAG 2167

Case 1:08-cr-00010-DLC   Document 3-2   Filed 02/29/2008   Page 1 of 4

07 MAG 2167

Approved: _____
          MICHAEL M. ROSENSAFT
          Assistant United States Attorney

Before:   HONORABLE RONALD L. ELLIS
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :
                                  :    COMPLAINT
          - v. -                  :
                                  :    Violation of
LEONARDO MONTES-REYES,            :    21 U.S.C. § 846
                                  :
                                  :    COUNTY OF OFFENSE:
          Defendant.              :    NEW YORK
                                  :

- - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

      MARLOW LUNA, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration, and charges as follows:

## COUNT ONE

      1.    From approximately in or about 2005 through on or about December 19, 2007, in the Southern District of New York and elsewhere, LEONARDO MONTES-REYES, the defendant, and others known and unknown, unlawfully, intentionally and knowingly did combine, conspire, confederate and agree together and with each other to violate the narcotics laws of the United States.

      2.    It was a part and an object of the conspiracy that LEONARDO MONTES-REYES, the defendant, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, to wit, 1 kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Sections 812, 841(a)(1) and 841(b)(1)(A).

      (Title 21, United States Code, Section 846.)

      3.    I am a Special Agent with the Drug Enforcement Administration ("DEA"), and I have been personally involved in the investigation of this matter. This affidavit is based upon

1

my own observations, my conversations with other law enforcement agents and others, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

4. On or about December 19, 2007, I and other law enforcement agents were conducting surveillance at the Newton Hotel, located in the vicinity of 95th Street and Broadway in Manhattan. Based on information provided by employees of the Newton Hotel and based on records maintained by the Newton Hotel, I and other law enforcement agents learned that LEONARDO MONTES-REYES, the defendant, stayed at the hotel approximately five times during the last two years. Each time MONTES-REYES stayed at the Newton hotel, he stayed for only one night and paid for his room in cash. I also learned that MONTES-REYES checked into the Newton Hotel on December 18, 2007, and paid for his room in cash.

5. On or about December 19, 2007, I and other law enforcement agents knocked on the door of the hotel room in which LEONARDO MONTES-REYES, the defendant, was staying and identified ourselves as law enforcement. After MONTES-REYES answered the door, I stated that we were looking for a missing person and asked MONTES-REYES if we could enter the room. MONTES-REYES gave consent for us to enter the room and look around.

6. After entering the room and looking around, I observed a suitcase and a duffle bag on the floor. I asked LEONARDO MONTES-REYES, the defendant, if he had any guns in the room, and MONTES-REYES responded that he did not. I then asked MONTES-REYES if I could look in his bags, and he stated that I could, and signed a written consent form.

7. Upon an examination of one of the bags, I noticed that the bag was very heavy and that there was a strange odor emanating from the bag. Inside the bag were numerous articles of clothing that were very damp. Based on my training and experience, I know that drug couriers sometimes reduce heroin to a liquid form and soak clothes in the liquid form in order to transport heroin and evade law enforcement. I also felt that the articles of clothing had something embedded in the linings.

8. I asked LEONARDO MONTES-REYES, the defendant, what the articles of clothing were, and MONTES-REYES stated that a man

in El Paso, Texas had asked him to bring the bag from Texas to New York, and that MONTES-REYES would be paid $3,000. MONTES-REYES further stated that he did not know what exactly was in the bag, but knew that it was something illegal.

9.  I and other law enforcement agents placed LEONARDO MONTES-REYES, the defendant, under arrest and advised him of his <u>Miranda</u> rights, which he agreed to waive. MONTES-REYES stated the following, among other things:

   a.  MONTES-REYES met an individual named "Primo," in El Paso approximately two years ago. "Primo" had told MONTES-REYES that he could make money by bringing bags from Texas to New York and would be paid $3,000 for each trip.

   b.  MONTES-REYES carried these bags to New York at least six times over the past two years. During five of those trips, MONTES-REYES stayed at the Newton Hotel in Manhattan, and on the other trip MONTES-REYES stayed at another hotel in Manhattan.

   c.  Each time MONTES-REYES made one of these trips, he was given a bag with approximately six to nine pairs of pants, and was given $500 for a bus ticket and $500 for expenses.

   d.  Upon arriving in New York on each of these trips, MONTES-REYES was called by different individuals who met MONTES-REYES in or near the hotel. MONTES-REYES gave the bag to the individual who met him, and, in turn, MONTES-REYES was paid $3,000.

10.  Law enforcement agents have examined the clothing found in the duffle bag recovered from LEONARDO MONTES-REYES, the defendant, and found inside the lining of the clothing, a large quantity of a white powdery substance. The substance was field tested, tested positive for heroin, and weighs approximately seven kilograms.

WHEREFORE, deponent prays that LEONARDO MONTES-REYES, the defendant, be imprisoned or bailed, as the case may be.

*[signature]*
SPECIAL AGENT MARLOW LUNA
DRUG ENFORCEMENT ADMINISTRATION

Sworn to before me this
20th day of December 2007

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

RONALD L. ELLIS
United States Magistrate Judge
Southern District of New York

U.S. DEPARTMENT OF JUSTICE
DRUG ENFORCEMENT ADMINISTRATION

## CONSENTIMIENTO A SER REGISTRADO

1. SE ME HA PEDIDO QUE AUTORICE A AGENTES ESPECIALES DE LA ADMINISTRACION DE CONTROL DE DROGAS A REGISTRAR: (Describir la persona, lugar o cosas a registrar.)

   Cuarto 814 en el Newton
   2528 Broadway, New York, NY

2. NO HE SIDO AMENAZADO/A, NI FORZADO/A DE NINGUNA MANERA.

3. YO HE CONSENTIDO LIBREMENTE A ESTE REGISTRO.

12/19/2007
Fecha

LEONARDO MONTES R
Firma

Testigos: _____ 12/19/07

_____ 12/19/07

DEA Form
(Jan. 2005) - 88a

8