UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA         :

       - v. -               :         08 Cr. 10 (DLC)

LEONARDO MONTES-REYES,     :

               Defendant.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## GOVERNMENT'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS


MICHAEL J. GARCIA
*United States Attorney for the*
*Southern District of New York*

*Attorney for the United States of America*


Michael M. Rosensaft
*Assistant United States Attorney*
*Of Counsel*

## **TABLE OF CONTENTS**

Factual Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Discussion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.      Applicable Law On Warrantless Consent Searches. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.     The Defendant Voluntarily Consented To The Search Of His Suitcase. . . . . . . . . . . . . . 6

III.    The Ruse Used By Law Enforcement Agents To Enter Montes-Reyes's
        Hotel Room Was Proper. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV.     Even Had The Ruse Been Improper, The Taint Of The Entry Had Dissipated
        When Montes-Reyes Consented To A Search Of His Suitcase. . . . . . . . . . . . . . . . . . . . . 12

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

<u>Brown</u> v. <u>State</u>, 835 A.2d 1208 (Md. 2003).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

<u>Bumpers</u> v. <u>North Carolina</u>, 391 U.S. 543 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,15

<u>Camara</u> v. <u>Municipal Court of San Francisco</u>, 387 U.S. 523 (1967). . . . . . . . . . . . . . . . . . 11

<u>Donavan</u> v. <u>Dewey</u>, 254 U.S. 594 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Frazier</u> v. <u>Cupp</u>, 394 U.S. 731 (1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

<u>Kansas</u> v. <u>Johnson</u>, 856 P.2d 134 (Kan. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>Kaupp</u> v. <u>Texas</u>, 538 U.S. 626 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

<u>Krause</u> v. <u>Commonwealth of Kentucky</u>, 206 S.W.3d 922 (Ky. 2006).. . . . . . . . . . . . . . . . . . 9

<u>Krause</u> v. <u>Penny</u>, 837 F.2d 595 (2d Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

<u>Lewis</u> v. <u>United States</u>, 385 U.S. 206 (1966).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

<u>Miller</u> v. <u>Fenton</u>, 796 F.2d 598 (3d Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

<u>People</u> v. <u>Daugherty</u>, 514 N.E.2d 228 (Ill. 1987).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>SEC</u> v. <u>ESM Government Securities</u>, 645 F.2d 310 (5th Cir. 1981). . . . . . . . . . . . . . . . . . . 11-12

<u>Schneckloth</u> v. <u>Bustamonte</u>, 412 U.S. 218 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6

<u>United States</u> v. <u>Arango-Correa</u>, 851 F.2d 54 (2d Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . 5

<u>United States</u> v. <u>Bosse</u>, 898 F.2d 113 (9th Cir. 1990).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11

<u>United States</u> v. <u>Bye</u>, 919 F.2d 6 (2d Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

<u>United States</u> v. <u>Camilo</u>, 287 F. Supp. 2d 446 (S.D.N.Y. 2003). . . . . . . . . . . . . . . . . . . . . . . . . 5

<u>United States</u> v. <u>Crespo</u>, 834 F.2d 267 (2d Cir. 1987).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

<u>United States</u> v. <u>Cruz</u>, 701 F. Supp. 440 (S.D.N.Y. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**Cases**                                                                      **Page**

United States v. Garcia, 56 F.3d 418 (2d Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

United States v. Giraldo, 743 F. Supp. 152 (E.D.N.Y. 1990). . . . . . . . . . . . . . . . . . . . . . 9, 12, 15

United States v. Glassel, 488 F.2d 143 (9th Cir. 1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States v. Hampton-El, 1994 Wl 708156, No. 93 Cr. 181 (S.D.N.Y. 1994). . . . . . . . . . . 11

United States v. Jones, 154 F. Supp. 2d 617 (S.D.N.Y. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . 5

United States v. Kon Yu-Leung, 910 F.2d 33 (2d Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . 5

United States v. Lopez-Lopez, 443 F. Supp. 2d 1130 (W.D. Mo. 2006).. . . . . . . . . . . . . . . . 10

United States v. Montoya, 70 F. Supp. 37 (E.D.N.Y. 1991). . . . . . . . . . . . . . . . . . . . . . . 6, 8, 9, 12

United States v. Oguns, 921 F.2d 442 (2d Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14

United States v. Raines, 536 F.2d 796 (8th Cir. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

United States v. Rivera, 762 F. Supp. 49 (S.D.N.Y. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

United States v. Schere, 673 F.2d 176 (7th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

United States v. Snype, 441 F.3d 119 (2d Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

United States v. Turpin, 707 F.2d 332 (8th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

United States v. Valencia, 645 F.2d 1158 (2d Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

United States v. Watson, 423 U.S. 411 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

United States v. Wright, 641 F.2d 602 (8th Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :

            - v. -                :          08 Cr. 10 (DLC)

LEONARDO MONTES-REYES,            :

                  Defendant.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**GOVERNMENT'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS**


The Government respectfully submits this memorandum of law in opposition to Leonardo Montes-Reyes's motion to suppress physical evidence and statements, filed on February 29, 2008.  The Defendant argues that the ruse used by law enforcement agents to gain entry to Montes-Reyes's hotel room on December 19, 2007, rendered his consent to enter involuntary; that Montes-Reyes never gave consent to search his suitcase; and even if consent was given, it was tainted by the improper entry.  The Government respectfully requests that the Court deny the Defendant's motion to suppress because the Defendant's consent to search his suitcase was voluntary.  Furthermore, the Government submits that the ruse used by law enforcement agents was proper, but even if the ruse was determined to be improper, the intervening acts between the entry and the consent given by Montes-Reyes removed any taint arising from the ruse.  However, as there is a factual dispute as to whether Montes-Reyes gave consent to search his suitcase at all, the Government concurs that an evidentiary hearing on that issue is necessary.

## **FACTUAL BACKGROUND**

On December 19, 2007, law enforcement agents were conducting surveillance at the Newton Hotel on 95th Street and Broadway in Manhattan.  Compl. ¶ 4.[1]  Based on records maintained by the hotel, agents of the Drug Enforcement Administration (the "DEA") learned that Montes-Reyes had stayed at the hotel approximately five times in the last two years, each time staying for only one night and paying for his room in cash.  Id.  After surveilling Montes-Reyes for a short period of time, the DEA agents knocked on his hotel room door, an agent fluent in Spanish identified themselves as police, and stated that they were checking all of the hotel rooms in the hotel for a missing girl.  Compl. ¶ 5; Montes-Reyes Decl. ¶¶ 4-5.  Montes-Reyes gave consent for law enforcement officers to enter his hotel room and look around.  Compl. ¶ 5; Montes-Reyes Decl. ¶ 6.  The notion of a "missing girl" was, in fact, a ruse used by law enforcement officers to gain entry into Montes-Reyes's hotel room.

Upon entering the hotel room, Special Agent Marlow Luna observed a suitcase and a duffle bag on the floor.  Compl. ¶ 6.  Special Agent Luna asked Montes-Reyes if he had any guns on him or in the room.  Id.  Montes-Reyes told Special Agent Luna that he did not.  Id.  Special Agent Luna then asked Montes-Reyes if he could look in his bags, and Montes-Reyes consented to the search of his bags both orally and by signing a written consent form to search the room.  Id.; Ex. B to Montes-Reyes Motion to Suppress Evidence.  Notably, this form was

---

[1]     "Compl." refers to the Complaint filed against Leonard Montes-Reyes, the Defendant, on December 20, 2007, and sworn to by Special Agent Marlow Luna of the Drug Enforcement Administration.  "Montes-Reyes Memo." refers to the memorandum of law submitted by Montes-Reyes in support of his motion to suppress on February 29, 2008, and "Montes-Reyes Decl." refers to the affirmation submitted in conjunction with that memorandum.

written in Spanish and identified the law enforcement agents in Spanish as Special Agents of the Drug Enforcement Administration.  Id.

Upon examining one of Montes-Reyes's bags, Special Agent Luna noticed that it was very heavy and that there was a strange odor emanating from the bag.  Compl. ¶ 7.  Based upon his training and experience, Special Agent Luna knew that drug couriers sometimes reduced heroin to a liquid form and then soaked clothes in the liquid heroin to transport it and evade law enforcement.  Id.  After opening one of Montes-Reyes's bags, Special Agent Luna also felt something embedded in the lining of the clothing.  Id.  When asked about the clothing, Montes-Reyes stated, in substance and in part, that a man in El Paso, Texas had asked him to bring the bag to New York for $3,000.  Compl. ¶ 8.  Montes-Reyes further stated that he did not know exactly what was in the bag, but that he knew the bag contained something illegal.  Id.  Law enforcement agents then placed Montes-Reyes under arrest and advised him of his Miranda rights, which he orally waived.  Compl. ¶ 9.  Montes-Reyes then stated that a man in El Paso, Texas named "Primo," hired him to transport bags from Texas to New York in exchange for $3,000 per trip.  Id.  After examining the clothing that was inside of Montes-Reyes's bag more thoroughly, law enforcement agents recovered approximately seven kilograms of a substance that tested positive for heroin.  Compl. ¶ 10.

The Defendant was initially charged in criminal complaint 07 Mag. 2167, and later indicted in the instant matter.  On February 29, 2008, Defendant filed the instant motion to suppress physical evidence and statements.  The Defendant submitted an affirmation with that motion, in which he stated that on December 19, 2007, he had obtained a room at the Hotel Newton.  Montes-Reyes Decl. ¶ 2.  The Defendant affirmed that in the late afternoon on

3

December 19, 2007, he heard a knock at his door from someone identifying himself as a police officer.  Montes-Reyes Decl. ¶ 4.  After opening the door, the Defendant stated that the man told him that the police were looking for a missing girl, and asked the Defendant if they could "look around" his room for the girl.  Montes-Reyes Decl. ¶ 5.  The Defendant agreed to let the police enter the room and look for the girl.  Montes-Reyes Decl. ¶ 6.  The Defendant alleges, however, that he did not give specific consent to search his possessions.  Montes-Reyes Decl. ¶ 11. Additionally, the Defendant alleges that he did not sign the written consent-to-search form before the agents conducted the search, and only signed it after he was taken to "some kind of police station."  Montes-Reyes Decl. ¶ 10.

## DISCUSSION

The Government respectfully requests that the Court deny the Defendant's motion to suppress physical evidence and statements because, given the totality of the surrounding circumstances, the Defendant's consent to search his suitcase was voluntary, and was not the product of dress or coercion.  The Government submits that ruse employed by the agents did not undermine the voluntariness of this consent.

## I.    Applicable Law On Warrantless Consent Searches

The warrantless search of a residence is generally unreasonable, however, "an individual may consent to a search, thereby rendering it reasonable."  United States v. Garcia, 56 F.3d 418, 422 (2d Cir. 1995).  "So long as the police do not coerce consent, a search conducted on the basis of consent is not an unreasonable search."  Id. (citing Schneckloth v. Bustamonte, 412 U.S. 218, 228(1973)).  Consent is valid if given voluntarily and not the product of duress or coercion, given the totality of the surrounding circumstances.  See Schneckloth, 412 U.S. at 227;

4

United States v. Kon Yu-Leung, 910 F.2d 33, 41 (2d Cir. 1990).  "The test for voluntariness is whether the consent was the product of an essentially free and unconstrained choice by its maker, and is a question of fact to be determined from all of the surrounding circumstances."  United States v. Arango-Correa, 851 F.2d 54, 57 (2d Cir. 1988) (internal citations omitted).

The Second Circuit "has steadfastly avoided the adoption of any criterion that, in and of itself, would mandate a finding of involuntariness and thereby undermine a thorough analysis of all the relevant circumstances."  United States v. Bye, 919 F.2d 6, 9 (2d Cir. 1990) (citing cases).  When assessing the voluntariness of consent, courts should consider the individual's age, intelligence and educational background, length and nature of questioning, and whether law enforcement officers engaged in coercion.  United States v. Jones, 154 F. Supp. 2d 617, 621 (S.D.N.Y. 2001) (citing Schneckloth, 412 U.S. at 226-27).

Valid consent "need not be expressed through any particular phrase, and it 'can be found from an individual's words, acts or conduct.'"  United States v. Camilo, 287 F. Supp. 2d 446, 451 (S.D.N.Y. 2003) (quoting Krause v. Penny, 837 F.2d 595, 597 (2d Cir. 1988)); see also, e.g., United States v. Jones, 154 F. Supp. 2d 617 (S.D.N.Y. 2001).  Even the fact that a defendant is under arrest or handcuffed when he gives consent to search does not render such consent involuntary.  See United States v. Crespo, 834 F.2d 267, 271 (2d Cir. 1987); United States v. Watson, 423 U.S. 411, 424 (1976) ("[T]he fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search."); United States v. Valencia,  645 F.2d 1158, 1165 (2d Cir. 1980).

Because the concept of "knowing and intelligent waiver . . . does not govern in the Fourth Amendment context," Garcia, 56 F.3d at 422, the Government has no affirmative duty to

advise a suspect that he has the right to refuse consent to the search of his residence, <u>see</u> <u>United</u> <u>States</u> v. <u>Crespo</u>, 834 F.2d 267, 271-72 (2d Cir. 1987) (<u>citing</u> <u>Schneckloth</u>, 412 U.S. 218). Furthermore, the fact that a ruse is used by law enforcement officers is but one factor that bears on the voluntariness of that consent. <u>See</u> <u>United States</u> v. <u>Montoya</u>, 70 F. Supp. 2d 37, 40 (E.D.N.Y. 1991) ("That officers obtain entry by ruse to the place where the consent is given is one but not the only factor which bears on whether the search is proper.").[2]

## II.     The Defendant Voluntarily Consented to the Search of His Suitcase

The facts surrounding the search of the Defendant's arrest demonstrate that Montes-Reyes voluntarily consented to have his bags searched. On December 19, 2007, DEA agents knocked on the Defendant's hotel room door, and identified themselves as police. Compl. ¶ 5; Montes-Reyes Decl. ¶ 4. The Defendant opened his door and the DEA agents told the Defendant that they were checking all of the rooms in the hotel for a missing girl. Compl. ¶ 5; Montes-Reyes Decl. ¶ 4. There is no dispute that the Defendant voluntarily invited the DEA agents, who had identified themselves as police, into his room. Compl. ¶ 5; Montes-Reyes Decl. ¶¶ 4-6.

Once DEA agents entered the Defendant's hotel room, Special Agent Luna asked Montes-Reyes if he had any guns on him or in the room. Compl. ¶ 5. Montes-Reyes told Special Agent Luna that he did not. <u>Id.</u> Special Agent Luna then asked Montes-Reyes if he could look in

---

[2]     The same is true in the analogous context of police lying to a defendant during interrogation. Such lies "must be analyzed in the context of all the circumstances of the interrogation." <u>Miller</u> v. <u>Fenton</u>, 796 F.2d 598, 607 (3d Cir. 1986), <u>citing</u> <u>Frazier</u> v. <u>Cupp</u>, 394 U.S. 731 (1969) (false statement by police officer that detainee's cousin had confessed, while relevant to issue of voluntariness, was insufficient to make otherwise voluntary confession inadmissible, considering "totality of the circumstances").

his bags.  Compl. ¶ 6.  Montes-Reyes consented to the search of his bags both orally and by signing a written consent form to search the room.  Id.; Ex. B to Montes-Reyes Motion to Suppress Evidence.  The Defendant does not deny signing the written consent-to-search form, but claims he did not sign it until after he was processed at DEA headquarters.  Montes-Reyes Decl. ¶ 10.  The Defendant claims that he did not specifically consent to letting the DEA agents search his bags before they conducted the search.  Montes-Reyes Decl. ¶¶ 10-11.  Therefore, the Government consents to an evidentiary hearing as to these contested issues of fact.

III.    **The Ruse Used By Law Enforcement Agents To Enter Montes-Reyes's Hotel Room Was Proper**

        In addition to his factual claim that he never gave consent to the agents before they searched his suitcase, the Defendant seeks suppression of the seized heroin on the basis that the agent's use of a ruse rendered involuntary any consent he may have given.  The Government submits there was nothing improper about the agents' use of a ruse to gain entry to the Defendant's hotel room.

        The use of ruses by law enforcement has long been held to be proper.  See generally Lewis v. United States, 385 U.S. 206 (1966) ("Indeed, it has long been acknowledged by the decisions of this Court, . . . that, in the detection of many types of crimes, the Government is entitled to use decoys and to conceal the identity of its agents.").  As stated clearly by the Ninth Circuit in United States v. Glassel, 488 F.2d 143, 145 (9th Cir. 1973):

        Under the rule of Lewis v. United States, . . . an officer may legitimately obtain an invitation into a house by misrepresenting his identity as Mann did.  If he is invited inside, he does not need probable cause to enter, he does not need a warrant, and, quite obviously, he does not need to announce his authority and purpose.  Once inside the house, he cannot exceed the scope of his invitation by ransacking the house generally, . . . but he may seize anything in plain view.

7

See also United States v. Turpin, 707 F.2d 332 (8th Cir. 1983) (fact that agents gained entry by falsely telling defendant he was not "in trouble" when he was in fact the prime murder suspect did not vitiate consent considering totality of circumstances); United States v. Schere, 673 F.2d 176, 181-82 (7th Cir. 1982) (nothing improper about undercover agent posing as cousin of an informant to gain invitation onto property); United States v. Wright, 641 F.2d 602 (8th Cir. 1981) (motion to suppress evidence denied when officer gained entry to defendant's home by pretending to have car trouble and asking defendant for tools and a flashlight); United States v. Raines, 536 F.2d 796 (8th Cir. 1976) (proper for law enforcement agent to represent himself as a mutual friend of defendant's drug associate to gain entry into house); Montoya, 70 F. Supp. at 39 ("[W]here the officer has reasonable suspicion and the occupant invites him in response to an express desire to buy drugs, the use of such a ruse is hardly unreasonable."); Kansas v. Johnson, 856 P.2d 134 (Kan. 1993) (consent voluntary under totality of circumstances even though agents gained access to home by stating untruthfully that they had a parole violation warrant for another individual). Similarly, in Brown v. State, 835 A.2d 1208 (Md. 2003), the Supreme Court of Maryland considered whether using a ruse in which a police officer pretended to be hotel maintenance so that he could get the defendant to open his door was proper under the United States Constitution. The Maryland Court looked at a wide spectrum of cases in which law enforcement officers had used ruses to gain entry to dwellings or hotel rooms, and concluded that in most cases such entries were deemed proper:

> Most of the Federal and State courts that have addressed the issue in the context of the Fourth Amendment have refused to suppress evidence seen in plain view or discovered pursuant to a consensual search after officers gained entry into motel rooms or other residential areas by various modes of deception-pretending to be

8

persons other than police officers or concealing their purpose.

Id. at 1212.

As the Defendant notes, there are some ruses that have been held to vitiate

consent because they do not give a voluntary choice to the defendant.  However, the ruse used in

this case is not one of those instances.  For example, law enforcement may not falsely claim that

they have administrative or legal authority to search a dwelling, as the individual then would

have no lawful basis to refuse a consent to search.  See, e.g., Bumpers v. North Carolina, 391

U.S. 543 (1968) (agents falsely stated they had a warrant to search the premises); United States v.

Cruz, 701 F. Supp. 440, 448 (S.D.N.Y. 1989) (J. Haight) (entry improper pursuant to Bumpers

because agents falsely stated they could quickly obtain a warrant).  Similarly, if the defendant is

made to believe that his life is in danger, or law enforcement otherwise employs harassing

tactics, such consent is not voluntary.  See Montoya, 70 F. Supp. at 29 ("A consent obtained by

coercive, overbearing, harassing, or humiliating tactics is invalid."); see, e.g., United States v.

Giraldo, 743 F. Supp. 152 (E.D.N.Y. 1990) (ruse improper where law enforcement agent told

defendant there was a gas leak, a "life-threatening emergency"); Krause v. Commonwealth of

Kentucky, 206 S.W.3d 922, 927 (Ky. 2006) (although noting that ruses were not per se

unconstitutional, holding that defendant's consent was coerced because police, in order to gain

entry into defendant's home, woke up the defendant at 4 a.m. and heinously (and falsely) accused

him of raping a girl).  Of course, law enforcement also cannot enter a dwelling as part of a ruse if

the resident still refuses them entry.  See, e.g., People v. Daugherty, 514 N.E. 2d 228, 233 (Ill.

1987) (officer asked to enter home, and when resident refused, he entered anyway); United States

v. Rivera, 762 F. Supp. 49 (S.D.N.Y. 1991) (J. Duffy) (law enforcement officers were refused

9

entry when they posed as drug buyers, although on a second try gained entry when posing as

neighbors).[3]  Finally, after obtaining consent to enter a dwelling through a ruse, law enforcement

cannot exceed the scope of that consent.  See, e.g., Lewis, 385 U.S. at 210-11 (once law

enforcement officer enters a dwelling as result of a ruse, he cannot exceed the scope of his

invitation by ransacking the house generally); United States v. Lopez-Lopez, 443 F. Supp. 2d

1130 (W.D. Mo. 2006) (granting motion to dismiss because officers told defendant they would

only search for identification documents in a limited area, but searched broadly for drugs).

Defense counsel cites the Ninth Circuit's decision in United States v. Bosse, 898

F.2d 113, 115 (9th Cir. 1990), for the broad proposition that "[a] ruse entry when a suspect is

informed that the person seeking entry is a government agent but is misinformed as to the

purpose for which the agent seeks entry cannot be justified by consent."  Montes-Reyes Memo.,

at 5.  Aa an initial matter, the Government disagrees with this broad proposition, and, indeed,

there is nothing in Second Circuit caselaw that supports this view.  More to the point, Bosse itself

does not stand for that broad proposition.  In Bosse, an ATF agent surreptitiously accompanied a

state licensing inspector, who had legal authority to inspect a dwelling.  Id. at 115.  The ATF

agent's only purpose, however, was to obtain information about the residence for use in a search

---

3    Rivera can also be distinguished on other grounds.  In Rivera, Judge Duffy placed
substantial weight on the fact that the agents had already seen a vial of crack in the residence, and
had previously been turned away by the defendant.  Id. at 52.  Judge Duffy noted that the fact that
agents saw the vial was "sufficient information to present to a magistrate for the issuance of a
warrant."  Id.  Thus, Judge Duffy framed the question as "[w]hether use of trick to gain entry
prior to the issuance of a warrant vitiates Rivera's purported consent after a law enforcement
official was once turned away from the apartment," and noted that the question was "open in this
circuit."  Id. at 53.  Neither of those two concerns is present in this case as: (1) Montes-Reyes had
never turned away any of the law enforcement officers; and (2) there was not already probable
cause to obtain a warrant.

warrant. Id. The ATF agent thus exceeded the scope of the defendant's invitation. Id. The Ninth Circuit case can best be grouped with the cases described above holding a ruse improper because: (1) the inspection was pursuant to lawful authority to which the defendant could not refuse; and (2) the ATF agent exceeded the scope of that inspection.[4]  The ruse used in Bosse is distinguishable from the ruse used by law enforcement officers in the present case.  Unlike in Bosse, the Defendant here could have refused the agent's request for entry into his hotel room – nothing about the ruse suggested that the Defendant was in any danger or should be concerned about his safety.  Moreover, once inside, the agents did not exceed the scope of their invitation to the room.  Indeed, the agents did not search the Defendant's suitcase until they sought and received his consent.

Similarly, the broad language criticizing deception by law enforcement in SEC v. ESM Government Securities, 645 F.2d 310 (5th Cir. 1981), is not applicable as the facts in that case are simply not comparable.  In ESM Government Securities, the Fifth Circuit was faced with a very different question than presented here: whether the SEC, in asking for three "tours" of a company in order to surreptitiously conduct a criminal investigation was an "abuse of process," such as to deny the enforcement of an administrative subpoena. Id. at 315.  The

---

[4]    The Ninth Circuit may also have been particularly concerned with the type of ruse used in Bosse to the extent it allowed an ATF agent to conduct a criminal investigation under the guise of a regulatory inspection, where probable cause standards are somewhat relaxed.  See, e.g., Donavan v. Dewey, 254 U.S. 594 (1981) (warrantless inspection of mines held to be proper to ensure compliance with health and safety standards); Camara v. Municipal Court of San Francisco, 387 U.S. 523 (1967) (relaxing probable cause standard in permitting municipal health inspectors to conduct a home inspection); United States v. Hampton-El, 1994 WL 708156, No. 93 Cr. 181 (S.D.N.Y. 1994) (J. Mukasey) (expressing concerns about agents posing as building inspectors to gain entry due to the "tangle of regulations and codes that govern buildings and the utilities within them").

concerns expressed by the Fifth Circuit in <u>ESM Governmernt Securities</u> related to the abuse of an administrative subpoena to gather criminal evidence – concerns that are not present in the instant case.

       Here, the premise of the Defendant's argument is that the ruse employed by the DEA rendered his consent to enter the room involuntary.  The Defendant suggests that the agent's "unsavory deception is on a par with or worse than the conduct deemed impermissible in the" cases cited in the Defendant's brief.  Montes-Reyes Memo., at 6.  This is hardly the case.  What is at issue is whether or not the ruse at issue gave the Defendant no real choice.  The Government respectfully submits that, unlike, for example, the gas leak ruse in <u>Giraldo</u>, the missing girl ruse did not, standing alone, implicate danger (to the Defendant or even the missing girl).  The Defendant knew that there was no missing girl in his room, so permitting the agents entry to check would have no bearing either way on the safety of the Defendant or the allegedly missing girl.  The threat of a gas leak, by comparison, could arguably render consent involuntary as no one could reasonably decline admission under those circumstances - either out of concern of one's own safety or that of others in the building.  The Government respectfully submits that the ruse employed by the agents was not improper.

**IV.    Even Had The Ruse Been Improper, The Taint Of the Entry Had Dissipated When Montes-Reyes Consented To A Search Of His Suitcase**

       Alternatively, this Court need not reach the question of whether the ruse was proper, as the taint of that ruse had dissipated by the time Montes-Reyes consented to the search of his bag.  See <u>Montoya</u>, 70 F. Supp.2d at 39 (finding that it need not reach the question of whether the entry was illegal because the entry did not "so taint Montoya's written consent as to

make the consent illegal").  Whether the taint of an improper entry has dissipated "must be answered on the facts of each case."  United States v. Snype, 441 F.3d 119, 134 (2d Cir. 2006). In particular, the Second Circuit has set forth the following factors as relevant to whether a subsequent consent has been purged of the taint of a prior illegal entry:  1) the giving of Miranda warnings; 2) the temporal proximity of the illegal entry and the consent; 3) the presence of intervening circumstances; and 4) the purpose and flagrancy of the entry and the consent.  Snype, 441 F.3d at 134; see also Kaupp v. Texas, 538 U.S. 626, 633 (2003).  An analysis of these four factors in this case, demonstrates that Montes-Reyes's consent to search his bag was fully purged of any alleged illegal entry.

The first factor, the giving of Miranda warnings, is not relevant to the analysis in this case because the Defendant was not in custody when he gave consent to search his suitcase. See Snype, 441 F.3d at 134 (noting that the first factor is "most relevant where the person giving consent is in custody").[5]

The second factor, the temporal proximity of the illegal entry and the consent, and the third factor, the presence of intervening circumstances, are closely connected and properly analyzed together.  As noted by the Second Circuit in Snype, "intervening events, even within a brief time, can sometimes sever the causal connection between an illegal entry and a subsequent consent to search, thereby permitting a court to conclude that the consent fairly reflects an act of free will."  Snype, 441 F.3d at 135.  Further, the Second Circuit's analysis of these two factors in United States v. Oguns, 921 F.2d 442 (2d Cir. 1990), is instructive.  In Oguns, while only a few

---

[5]    Although the giving of Miranda warnings is not relevant to a consideration as to whether the search was proper, it should be noted that Montes-Reyes had been given Miranda warnings, and had waived those rights, before making his post-arrest statements.  See Compl. ¶ 9.

13

minutes had passed between the illegal entry and the subsequent consent, the Second Circuit

found:

> [W]ithin this short period of time, however, the agents read to Oguns a consent to search form, indicating Oguns' right to refuse to consent to a search. Oguns reread the form himself and then signed it. Through the intervening act, the agents effectively advised Oguns of his Fourth Amendment rights . . . [and] the agents did not seize any evidence until after Oguns consented to a search.

Id. at 447. In the present case, after entering the room, law enforcement agents first asked

whether there were any firearms in the room, and then asked Montes-Reyes for consent to search

his bags. Compl. ¶ 6. Then, after he consented, the agents asked him to review and sign a

written consent-to-search form before conducting that search.[6] Compl. ¶ 6; Ex. B to Montes-

Reyes Memo. Just like in Oguns, the verbal consent to search followed by the signing of the

written consent-to-search form was a significant intervening act. Notably, the written consent-to-

search form:

1.      Identified the law enforcement agents as DEA agents;

2.      Noted that the DEA agents had asked for (as opposed to ordering or mandating)

        Montes-Reyes's authorization for their search, at the very least implying a right to

        refuse;

3.      Affirmed that Montes-Reyes was not threatened or forced to sign the form; and

4.      Plainly stated that Montes-Reyes had freely consented to the search.

Ex. B to Montes-Reyes Memo. Thus, although only minutes passed between the entry and

Montes-Reyes's consent to search his bags, the intervening questions posed by the agents and the

---

[6]     The Government notes that this is not a situation where the agents were given access to a rom through an impermissible ruse and then saw contraband in plain view. The agents explicitly sought consent and received it orally and in writing before searching the Defendant's suitcase.

written consent-to-search form informed Montes-Reyes of the general purpose of the search, at the very least implied that he had a right to refuse, and affirmed that Montes-Reyes freely consented to the search.  Thus, (1) the agent's questions about firearms; (2) the request to search his suitcase; (3) Montes-Reyes's oral consent; and (4) Montes-Reyes's signing of the written consent-to-search form, all were significant intervening acts that removed the taint from any alleged illegality from the ruse.  In light of these intervening acts, the Defendant cannot credibly maintain that he was still affected by the "missing girl" ruse when he gave consent for his suitcase to be searched.

        The last factor that must be examined is the purpose and flagrancy of the illegal entry.  As discussed extensively above, using ruses is, in fact, proper, and has been approved of by many courts.  Thus, the mere use of a ruse cannot be said to be flagrant.  Specifically, this is not a case where law enforcement agents gained entry by falsely claiming they had legal authority to enter the premises, cf. Bumpers, 391 U.S. 543, or where law enforcement agents used harassing tactics by making a defendant believe his life was in danger, cf. Giraldo, 743 F. Supp. 152.  If an evidentiary hearing is held as to the circumstances surrounding the entry and the subsequent consent given by Montes-Reyes, the Government would expect the testimony to reveal that the law enforcement officers did not act in a threatening or harassing manner, and, in fact, that the Defendant was calm throughout the entry and subsequent search.

        Therefore, considering the four factors discussed above, the Government would expect to show at a hearing that, even if the ruse used by law enforcement officers to gain entry into Montes-Reyes's hotel room is determined to be improper, the subsequent consent given by Montes-Reyes to search his bags, and, the significant intervening act of reading and signing the

consent to search form, removed the taint of the alleged illegality.

## **CONCLUSION**

For the reasons set forth above, the Government respectfully submits that the

Defendant's motion to suppress should be denied.  In light of the factual dispute, the Government

consents to a limited hearing at which time the Government will present evidence establishing

that the Defendant gave voluntary consent to search his bags.

Dated: March 14, 2008
      New York, New York

                              Respectfully submitted,

                              MICHAEL J. GARCIA
                              United States Attorney

By:      /s Michael M. Rosensaft
                              Michael M. Rosensaft
                              Assistant United States Attorney
                              (212) 637-2366

<u>CERTIFICATE OF SERVICE</u>

I, Michael M. Rosensaft, affirm under penalty of perjury as follows:

1.     I am an Assistant United States Attorney in the Southern District of New York.

2.     On March 14, 2004, I caused a copy of the foregoing Government's Memorandum of Law in Opposition to Defendant's Motion to Suppress, to be served by ECF and Federal Express on:

> Mark Gombiner, Esq.
> Legal Aid Society
> Federal Defenders Division
> 52 Duane Street, 10th Floor
> New York, NY 10007

I declare under penalty of perjury that the foregoing is true and correct.  28 U.S.C. § 1746.


   /s Michael M. Rosensaft
Michael M. Rosensaft
Assistant United States Attorney
Telephone:  (212) 637-2366